IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE PATRICIA GRAY          :        CIVIL ACTION
                             :
                             :        NO. 13-2037

**MEMORANDUM**

Padova, J.                                          September 17, 2013

In this appeal arising out of a Chapter 13 Bankruptcy, Patricia Gray challenges a Bankruptcy Court order that granted Appellee PennyMac Corp. ("PennyMac") relief from the automatic stay in bankruptcy and permitted PennyMac to proceed *in rem* against real property in which Gray holds an ownership interest and on which PennyMac holds a mortgage. For the following reasons, we affirm the bankruptcy court order.

**I.      BACKGROUND**

On January 30, 1981, Appellant Patricia Gray and her sister, Gwendolyn Jackson, entered into a thirty-year mortgage in the amount of $52,000.00 (the "Mortgage"), which was secured by property at 2276-78 North 51st Street in Philadelphia (the "Property"). In September 1996, the then-Mortgage holder, Mellon Bank, N.A. ("Mellon"), instituted a foreclosure action in the Court of Common Pleas of Philadelphia County, alleging that Gray and Jackson were in default on the Mortgage. See Mellon Bank N.A. v. Jackson, Sept. Term 1996, No. 1265 (C.C.P. Philadelphia Cnty.).

Many years passed, during which little progress was made in the litigation. (See R12,[1] Ex. A at 6-16.) On August 23, 2004, almost eight years after commencing the foreclosure action, Mellon assigned the Mortgage to Credit Based Asset Servicing and Securitization ("Credit

---

[1] All references beginning with an "R" are references to the Official Record on Appeal, which the United States Bankruptcy Court, Eastern District of Pennsylvania forwarded to this Court on April 16, 2013.

Based"), which assumed the role of the plaintiff in the action. (R10, Ex. C at 4; R12, Ex. A at 21.) In the course of the litigation, Jackson failed to respond to Credit Based's requests for production of documents and, as a result, the trial court precluded Jackson from presenting any defense to Credit Based's claims. (R10, Ex. E at 2.) Credit Based and Jackson thereafter stipulated to a judgment order, which entered summary judgment in favor of Credit Based and against Jackson. (Id.) Credit Based's claim against Gray, however, remained outstanding. Gray asserted, in defense of the foreclosure action, that she did not receive Act 6 or Act 91 notices, which advise homeowners facing foreclosure of their legal rights. (Id. at 1-2 and n.1); see 41 Pa. Cons. Stat. Ann. § 403; 135 Pa. Stat. Ann. § 1680.403c. Credit Based's claim against Gray was eventually resolved on January 31, 2006, with a verdict in Gray's favor following a non-jury trial. (R12, Ex. A at 27.)

Twenty-one months later, on November 2, 2007, Credit Based filed a "Praecipe to Discontinue the Mortgage Foreclosure Action without Prejudice." (R10, Ex. E at 4.) In response, Gray filed a Petition to Strike off the Praecipe, which the trial court denied in an Order dated June 4, 2008. (R10, Ex. D.) The court stated in its Order that Credit Based could proceed with filing a new foreclosure action in accordance with Pennsylvania Rules of Civil Procedure 1141-1150, which pertain to actions of mortgage foreclosure, but added that Credit Based was "specifically precluded from pursuing an in personam action against" Gray in light of the non-jury verdict in her favor. (Id.)

Gray appealed the June 4, 2008 Order to the Pennsylvania Superior Court, arguing, inter alia, that the trial court had erred in refusing to strike Credit Based's Praecipe to Discontinue, because the Praecipe had been filed after the non-jury trial had concluded, in violation of

2

Pennsylvania Rule of Civil Procedure 229(a). See Pa. R. Civ. P. 229(a) (permitting a discontinuance "by the plaintiff before commencement of the trial" (emphasis added)). The Superior Court ruled in Gray's favor on this issue in a September 9, 2010 Memorandum and Order,[2] noting that it could "find no authority, and cannot conceive of any, that would countenance discontinuance of a case after a non-jury trial has concluded and the trial court has rendered its decision." (R10, Ex. E at 7.) The Superior Court also specifically rejected Credit Based's argument that the discontinuance was justified because the trial court had not ruled on whether Gray and Jackson were in default on the Mortgage, observing that the very factual premise of this argument was in error, because the trial court had clearly concluded that the Mortgage was in default. (Id. at 8.) Based on its analysis, the Superior Court reversed the trial court order and remanded the case, with instructions that the trial court enter judgment on the January 31, 2006 verdict. (Id. at 10.) The trial court entered judgment in Gray's favor and against Credit Based in an Order dated May 11, 2011. (R12, Ex. B.)

Shortly before the trial court entered judgment, on April 25, 2011, Gray filed a Petition under Chapter 13 of the Bankruptcy Code. (R3.) The Bankruptcy Court confirmed Gray's Chapter 13 Plan on April 18, 2012. (Id. at 10.) The Plan, however, provided for no payments on the Mortgage, which had matured on February 1, 2011. On July 12, 2012, all rights and remedies under the Mortgage were assigned to Appellee PennyMac. On September 7, 2012, PennyMac filed a Motion for Relief from the Automatic Stay that had been imposed in connection with the filing of Gray's bankruptcy petition. (R7.) The Motion averred that Gray had failed to make timely monthly post-petition mortgage payments in late 2011 and 2012, that the total amount

---

[2] Mellon Bank, N.A. v. Jackson, No. 1987 EDA 2008 (Pa. Super. Ct.).

necessary to reinstate the loan post-petition was $16,559.12, and that PennyMac therefore sought leave to proceed against Gray in a mortgage foreclosure action to recover the amount owed. (Id. ¶¶ 7-10.). The Bankruptcy Court, however, denied that Motion without prejudice on October 3, 2012, noting at a hearing on the Motion that PennyMac could not proceed against Gray personally on the Mortgage in light of the outcomes of the non-jury trial in state court and the Superior Court appeal. (See Audio Recording of Oct. 3, 2012 Hr'g, Docket No. 9.[3])

On January 16, 2013, PennyMac filed a Motion for In Rem Relief from the Automatic Stay. (R10.) The Motion was filed pursuant to 11 U.S.C. § 362(d)(4)(B), which permits a creditor whose claim is secured by an interest in real property to obtain relief from a stay prohibiting acts against the real property, provided that the court finds that the filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors, which involved multiple bankruptcy filings affecting the real property.[4] PennyMac argued in the Motion that its

---

[3] The transcripts of this hearing and a subsequent February 6, 2013 hearing are listed in the Bankruptcy Court's "Index of Record on Appeal," but are accompanied by a notation stating "Not part of court record." We also note that Gray initially listed the transcripts of these hearings on her Designation of Items to Include on the Record on Appeal (R4), but subsequently filed an Amended Designation of Items to Include on the Record on Appeal, which stated that she had removed the transcripts from her list because "the Court stated that [she] could not use In Forma Pauperis status to obtain the same" (R5). See Fed. R. Bankr. P. 2008 (requiring party designating transcript as part of the record to make "satisfactory arrangements for payment of its cost"). We have therefore obtained the audio recordings of the hearings from the Bankruptcy Court, filed those recordings of record in this case at Docket No. 9, and refer to the contents of those recordings in this Memorandum.

[4] 11 U.S.C. § 362(d)(4)(B) provides, in pertinent part, that a court may grant relief from the automatic stay:

> (4) with respect to a stay of an act against real property . . . by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . .

4

interest in the Property was not adequately protected, that the fair market value of the Property was declining, that PennyMac's interest against that decline was not protected because no mortgage payments were being made, and that Gray's multiple bankruptcy filings prior to that time had not been made in good faith and were, in fact, filed to forestall creditors.  (See R10 at ¶¶ 19-22, 25.)

On February 6, 2013, the Bankruptcy Court held a hearing on the Motion, during which it noted that Gray had filed numerous bankruptcies involving the Property, and that those bankruptcies, "by any measure," constituted an "abuse of the system."  (Audio Recording of Feb. 6, 2013 Hr'g, Docket No. 9.)  In an Order dated February 6, 2013, but entered the following day (the "February 7, 2013 Order"), the Bankruptcy Court granted PennyMac's Motion, thereby permitting PennyMac to proceed in rem against the premises at 2276-78 North 51st Street insofar as such action was necessary for PennyMac to enforce its right to possession of, or title to, the Property.  (R1 at 3.)  Gray filed a Motion for Reconsideration of the February 7, 2013 Order, but she withdrew that Motion on February 22, 2013.  Gray filed her appeal to this Court on April 17, 2013.

## II. LEGAL STANDARD

"[I]n bankruptcy cases[,] the district court sits as an appellate court," In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995) (citing Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3d Cir.1988)), and "may affirm, modify, or reverse [the] bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. District courts and circuit courts review bankruptcy orders under the same standard.  See

---

\* \* \*
(B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4).

Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1223 (3d Cir. 1995) (citation omitted). We review a bankruptcy court's "'findings of fact for clear error and its legal conclusions *de novo*.'" In re Jersey Tractor Trailer Training Inc., 580 F.3d 147, 153 (3d Cir. 2009) (quoting In re Pransky, 318 F.3d 536, 542 (3d Cir. 2003)). At the same time, we review a bankruptcy court order lifting an automatic stay for abuse of discretion. In re Myers, 491 F.3d 120, 128 (3d Cir. 2007) (citations omitted). Similarly, "[a] determination of bad faith is 'a fact intensive determination better left to the discretion of the bankruptcy court.'" Id. at 125 (quoting In re Lilley, 91 F.3d 491, 496 (3d Cir.1996)). "An abuse of discretion arises when the [bankruptcy] court's decision 'rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.'" Oddi v. Ford Motor Co., 234 F.3d 136, 146 (3d Cir. 2000) (quoting Hanover Potato Prods., Inc. v. Shalala, 989 F.2d 123, 127 (3d Cir. 1993)).

### III. DISCUSSION

#### A. PennyMac's Standing

Gray argues that PennyMac did not have standing to move for relief from the automatic stay and, thus, the Bankruptcy Court did not have jurisdiction to enter an order on Penny Mac's Motion. Specifically, she argues that PennyMac lacked standing because it was assigned the Mortgage after Gray's liability under the Mortgage had been fully litigated in state court and, therefore, it was not entitled to be "a creditor or person of interest in" Gray's bankruptcy. (Appellant's Br. at 8.)

However, a party with a legal interest in a property has standing under the Bankruptcy Code to move to lift an automatic stay that is preventing that party from enforcing its legal interest. See In re Alcide, 450 B.R. 526, 535-36 (Bankr. E.D. Pa. 2011) (explaining that a mortgage holder

6

seeking to foreclose on a property has standing to move for relief from an automatic stay because it has a legal interest in the property). Here, the Mortgage, along "with all interest, all liens, any rights due or to be come due thereon," was assigned to PennyMac on July 30, 2012, and Gray does not challenge the validity of that assignment. (R10, Ex. C at 13.) Accordingly, to the extent that there are any rights and remedies existing under that Mortgage, they belong to PennyMac, and PennyMac has standing to enforce them. We therefore reject Gray's argument to the contrary.[5]

B. The Rooker-Feldman Doctrine

Gray argues that the Bankruptcy Court Order violated the Rooker-Feldman Doctrine by permitting PennyMac to proceed in rem against the Property, because the Mortgage had already been fully adjudicated in state court, and Grey was found to not be liable under the Mortgage. Under the Rooker-Feldman doctrine, a party who loses in state court may not bring an action in federal court, complaining of injuries caused by the state court judgment. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). The United States Court of Appeals for the Third Circuit has stated:

---

[5] Gray also asserts that PennyMac did not have the "capacity to sue" for in rem relief. (Appellant's Br. at 8.) The rules regarding a party's capacity to sue are set forth in in Federal Rule of Civil Procedure 17, which states that an action must be prosecuted in the name of the "real party in interest," Fed. R. Civ. P. 17(a), and adds that a corporation's capacity to sue "is determined by the law under which it was organized." Fed. R. Civ. P. 17(b)(2). Here, as explained above, the Mortgage was assigned to PennyMac and, thus, PennyMac is clearly the real party in interest. See Emerald Investors Trust v. Gaunt Parsippany Partners, 492 F.3d 192, 199 n.10 (3d Cir. 2007) (explaining that, where mortgages were assigned to a plaintiff, the plaintiff was the real party in interest in an action to enforce the mortgages). We therefore reject Gray's capacity to sue argument insofar as it rests on an assertion that PennyMac was not the real party in interest. With respect to a corporation's capacity to sue, Gray does not develop any argument; she does not identify the law under which PennyMac was organized, much less argue that such law does not give corporations the right to sue and be sue. Accordingly, we conclude that she is not asserting an argument under Fed. R. Civ. 17(b)(2).

7

> [T]here are four requirements that must be met for the Rooker–Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (quoting Exxon Mobil, 544 U.S. at 284). The "critical question" thus becomes whether the plaintiff is a "'state court loser[] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" Id. at 170-71 (alteration in original) (quoting Exxon Mobil, 544 U.S. at 284).

Here, there is no dispute that PennyMac's predecessor, Credit Based, lost in its state court foreclosure action against Gray, and that the state court judgment in Gray's favor was rendered before PennyMac sought in rem relief from the automatic stay relief in the Bankruptcy Court. However, PennyMac is not complaining of injuries caused by the state court judgment; it is complaining of injuries sustained as a result of Gray's and Jackson's adjudicated default on the Mortgage.[6] Moreover, PennyMac is not seeking review and rejection of the state court judgment, which merely prohibits it (as Credit Based's assignee) from recovering a money judgment from Gray personally. Rather, PennyMac is asking for leave to pursue alternative, in rem relief, i.e., seizure of the property at 2276-78 North 51st Street, which is the collateral securing the defaulted Mortgage. We therefore conclude that PennyMac is not complaining of injuries caused by a state

---

[6] That both Gray and Jackson were adjudicated in default on the Mortgage is confirmed in the Superior Court Opinion, which states: "Credit Based argued that the trial court did not rule on whether defendants were in default on the mortgage in question. The record belies such a conclusion." (R10, Ex. E at 8.)

8

court judgment and is not inviting us to review and reject any such judgment. Accordingly, the Rooker-Feldman Doctrine does not deprive us of jurisdiction over this action and we reject Gray's assertion to the contrary.

C. Bad Faith

Gray argues that the Bankruptcy Court erred in determining at the February 6, 2013 hearing that she had filed bad faith bankruptcies, which interfered with PennyMac's ability to foreclose on the real property at 2276-78 N. 51st Street in Philadelphia. Significantly, Gray does not dispute that she filed multiple bankruptcies that involved the Property,[7] but rather argues only that those bankruptcies did not interfere with PennyMac's rights, because PennyMac was not her creditor when the bankruptcies were commenced. It is, however, inconsequential that PennyMac was not Gray's creditor at the time she filed her bankruptcies.

As noted above, in granting PennyMac relief from the automatic stay, the Bankruptcy Court relied on 11 U.S.C. § 362(d)(4). See n.4 supra. Contrary to Gray's suggestion, this statutory provision, by its terms, does not require the Bankruptcy Court to find that the creditor whose claim is secured by an interest in real property has itself been stymied in its efforts to enforce its claim. Rather, it requires only that the Bankruptcy Court find that the debtor's

---

[7] There is, in fact, no question that Gray has filed a least five bankruptcies in the Eastern District of Pennsylvania. See In re Patricia Gray, Civ. A. Nos. 11-4594, 11-4595, 2012 WL 515878, *5 (E.D. Pa. Feb. 16, 2012). Consequently, over two years ago, on June 15, 2011, the Bankruptcy Court issued an order requiring Patricia to request leave before filing any further bankruptcy petitions. See id. at *2, *5. In doing so, the Bankruptcy Court described the numerous bankruptcy petitions filed by both Gray and her husband as "'abusive serial filings,'" which were "'an attempt to forestall' [various] state court proceedings" against the Grays. Id. at *5 (quoting 6/15/11 Hr'g Tr. at 4, 8, In re T. Barry Gray, Bankr. No. 10-30808 (E.D. Pa.)). Subsequently, at the February 6, 2013 hearing in the instant case, the Bankruptcy Court commented that Gray has, "by any measure," engaged in an "abuse of the system." (Audio Recording of Feb. 6, 2013 Hr'g, Docket No. 9.)

"multiple bankruptcy filings affecting [the] real property" at issue "was part of a scheme to delay, hinder or defraud creditors" in general. Id. Thus, we reject Gray's contention that the Bankruptcy Court erred in finding that she had engaged in bad faith sufficient to warrant relief from the automatic stay because it failed to find that her bankruptcy filings had occurred when PennyMac was itself her creditor.

      D.     <u>Federal Rules of Bankruptcy Procedure 3002.1(b), 3002.1(c), and 4001(a)(3)</u>

In a separate heading in her appellate brief, Gray argues that the Bankruptcy Court erred in relying on Federal Rules of Bankruptcy Procedure 3002.1(b), 3002.1(c) and 4001(a)(3) in granting the <u>in rem</u> relief that Penny Mac sought. (Appellant's Br. at 29.) Under that heading, however, Gray does not develop any coherent argument regarding these rules, which concern notices that must be provided to the debtor in connection with claims secured by security interests in the debtor's principal residence, Fed. R. Bankr. P. 3002.1(b), (c), and provide for a fourteen-day period in which an order granting relief from an automatic stay may not be enforced, Fed. R. Bank. P. 4001(a)(3). Instead, Gray merely quotes the three rules and then asserts that "[t]he mortgage set forth by PennyMac makes [it] neither a creditor or interested party in the Debtor's bankruptcy, therefore, the Bankruptcy Court should not have granted their motion for relief from the stay." (Appellant's Br. at 29-30.) As this argument has no discernible connection to the Bankruptcy Rules to which Gray refers, we conclude that Gray's arguments based on these Federal Rules of Bankruptcy Procedure are meritless.

      E.     <u>Doctrine of Merger of Judgments</u>

Gray argues that the Bankruptcy Court Order violated the doctrine of merger of judgments in mortgage foreclosure actions. Specifically, Gray maintains that, pursuant to the merger of

judgments doctrine, the judgment in her favor in the state court foreclosure action functioned to extinguish the Mortgage. She therefore contends that it was error for the Bankruptcy Court to subsequently grant PennyMac relief from the automatic stay to pursue <u>in rem</u> relief under the extinguished Mortgage.

Under Pennsylvania law, the doctrine of merger of judgments provides that "after the entry of a foreclosure, the terms of the mortgage are merged into the foreclosure judgment and the mortgage no longer provides a basis for determining the respective rights and obligations of the parties." <u>In re Smith</u>, 463 B.R. 756, 761 (E.D. Pa. 2012) (citing <u>In re Stendardo</u>, 991 F.2d 1089 (3d Cir. 1993)). In essence, "the foreclosure judgment constitutes a 'new and higher' obligation," that replaces the obligations set forth in the mortgage. <u>Id.</u> (quoting <u>Stendardo</u>, 991 F.2d at 1098).

In the instant case, unlike the cases in which the merger of judgments doctrine has been applied, the state court action did not result in an entry of foreclosure in favor of the then-mortgagee, i.e., Credit Based. Rather, it resulted in a judgment in Gray's favor. Moreover, the scope of that action was limited insofar as it only involved and resolved Gray's personal liability on the mortgage and did not in any way address the continued validity of the Mortgage or Credit Based's right to <u>in rem</u> relief under the Mortgage. Accordingly, we find this case distinguishable from the cases on which Gray relies, which applied the doctrine of merger of judgments to extinguish a mortgage after a judgment of foreclosure, and we conclude that the merger of judgments doctrine is inapplicable under the circumstances of this case. We therefore reject Gray's argument that the Bankruptcy Court order violated this doctrine by granting PennyMac limited relief from the automatic stay.

F.  Res Judicata and Collateral Estoppel

Finally, Gray argues that the doctrines of res judicata and collateral estoppel barred the bankruptcy court from granting in rem relief to PennyMac, because the state court judgment in her favor established that PennyMac had no rights under the Mortgage. Again, however, Gray's argument rests on a misinterpretation of the state court judgment as reflected in the record before us and, thus, fails to establish any right to appellate relief.

Under Pennsylvania law, res judicata, also called claim preclusion, precludes claims that either were actually litigated or could have been litigated during a prior proceeding, provided that the two actions "share the following four conditions: (1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." R & J Holding Co. v. Redevelopment Auth. of Cnty. of Montgomery, 670 F.3d 420, 427 (3d Cir. 2011) (citing Bearoff v. Bearoff Bros., Inc., 327 A.2d 72, 74 (1974)). While claim preclusion bars re-litigation of an entire case, collateral estoppel, also called issue preclusion, "bars re-litigation of discrete issues, even in a case based on an entirely different claim." Id. at 429. "The fundamental question is whether the issue has been *actually decided* by a court in a prior action." Id. (citing McNeil v. Owens–Corning Fiberglas Corp., 545 Pa. 209, 680 A.2d 1145, 1147–48 (1996)).

Here, the record does not establish that the state court foreclosure action in any way resolved the issue of whether PennyMac was entitled to move against the property by seeking in rem relief. Rather, the record indicates that the action only addressed whether the Mortgage was in default (which it was) and whether Credit Based was entitled to collect money judgments, i.e., in personam relief, from Gray and Jackson as a result of that default (which it was as to Jackson, but

12

was not as to Gray). Therefore, we can only conclude that the proceeding in the Bankruptcy Court, which granted Penny Mac relief from the automatic stay in order to proceed in rem against the property in state court, did not re-litigate any issue that was actually decided in the state court action. Moreover, we can find nothing in the record before us that suggests that Credit Based could have moved for in rem relief in the state court action, such that we could conclude that res judicata might apply.[8] Consequently, we conclude that Gray has failed to establish that the state court judgment had a preclusive effect that prevented the Bankruptcy Court from granting relief from the automatic stay in order to pursue in rem relief.

IV. CONCLUSION

For the foregoing reasons, we affirm the Order of the Bankruptcy Court. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.

---

[8] Gray does not argue that Credit Based could have moved for in rem relief in the state court action, because her position is apparently that it did move for such relief and was unsuccessful. However, the record before us contains no evidence that Credit Based ever made such a request in state court. Moreover, as we have repeatedly noted, we read the few state court documents in the record before us to establish only that in personam relief was sought. We therefore find that Gray has failed to establish that Credit Based's entitlement to in rem relief was, or could have been, litigated in the state court action.